UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


PAUL S. HENDERSON,            )   1:14CV2257
                              )
            Petitioner        )
                              )
                              )   JUDGE JAMES S. GWIN
      v.                      )   (Mag. Judge Kenneth S. McHargh)
                              )
JASON BUNTING,                )
            Warden,           )
                              )
            Respondent        )   REPORT AND
                              )   RECOMMENDATION


McHARGH, MAG. JUDGE

       The petitioner Paul S. Henderson ("Henderson") has filed a petition pro se for

a writ of habeas corpus, arising out of his 2009 and 2010 convictions for drug

trafficking, drug possession, and other crimes, in the Cuyahoga County (Ohio) Court

of Common Pleas.  In his petition, Henderson raises six grounds for relief:

       1.  The trial court [erred] to the prejudice of Petitioner in violation of
       his fourth Amendment right to be free from illegal seizure of a person
       and Properties.

       2.  The trial court [erred] to the prejudice of Petitioner in violation of
       his fifth Amendment right against self incrimination.

       3.  Trial Counsel was not effective, and had Counsel been Counsel as
       Guaranteed under the Sixth [Amendment] the outcome would have
       been different.

       4.  Being wrongfully imprisoned for operating a legitimate Business
       was Cruel and Unusual Punishment because it violated the Eighth
       Amendment.

5.  The cumulative effect of Claims I through IV Denied Petitioner Due Process in violation of his fourteenth Amendment.

6.  Insufficient, evidence in violation of the 5th, and 14th Amendments of the United States Constitution, and NO authority or jurisdiction of law to do so.

(Doc. 1, § 12.)

The respondent has filed a Return of Writ (doc. 15), and Henderson has filed a Traverse (doc. 17).  The respondent contends that the claims in Henderson's petition are untimely.  (Doc. 15, at 13-14, 15-19.)  The respondent also asserts that certain of his claims are unexhausted, and others should be barred as procedurally defaulted.  (Doc. 15, at 13-14.)


## I.  FACTUAL AND PROCEDURAL BACKGROUND

Henderson's petition challenges two separate state convictions, judgments dated September 30, 2009, and June 16, 2010, in the Cuyahoga County (Ohio) Court of Common Pleas.  (Doc. 1, at § 2.)  The petition states that the state court of appeals affirmed the lower court's judgment on March 15, 2012.  (Doc. 1, at § 9(c).)

In case number CR-09-520709, Henderson was indicted on Feb. 6, 2009, and sentenced on Aug. 17, 2009.  (Doc. 15, RX 1, 4.)  He pled guilty to one count of drug trafficking, and did not file a timely direct appeal.  (Doc. 15, RX 3, 4.)

In case number CR-09-530899, Henderson was indicted on Dec. 10, 2009 (doc. 15, RX 6), and was found by a jury to be guilty of drug trafficking, drug possession, and possession of criminal tools (doc. 15, RX 8).  He was sentenced on June 8, 2010.

2

(Doc. 15, RX 9.)  His conviction was affirmed on appeal.  (Doc. 15, RX 20; State v. Henderson, No. 95655, 2012 WL 892905 (Ohio Ct. App. March 15, 2012).)  See generally State v. Henderson, No. 100374, 2014 WL 2466106 (Ohio Ct. App. May 29, 2014).  It does not appear that these criminal cases were consolidated by the state.[1]

The Ohio Court of Appeals provided the following background, in his appeal of the 530899 case:

> Defendant-Appellant, Paul Henderson, appeals his convictions for drug trafficking, drug possession, and possession of criminal tools. After careful review of the record and relevant case law, we affirm appellant's convictions.

> On December 10, 2009, appellant was named in a three-count indictment charging him with trafficking in marijuana in excess of 20,000 grams, in violation of R.C. 2925.03(A)(2), a felony of the second degree; drug possession in excess of 20,000 grams of marijuana, in violation of R.C. 2925.11(A), a felony of the second degree; and possession of criminal tools, in violation of R.C. 2923.24(A), a felony of the fifth degree.

> Appellant's jury trial commenced on June 4, 2010. The following testimony was presented at trial.

> Paulette Gentry testified that she was employed by Town Air Freight as a shift supervisor and dispatcher. Gentry stated that on September 9, 2009, she noticed a package that aroused her suspicions because it reminded her of a 2008 instance where authorities discovered a large quantity of marijuana in a package that had been delivered for pickup

---

[1]  Without the benefit of briefing or arguments by the parties, it would appear that Henderson is not barred from presenting challenges to two separate state convictions in a single petition for habeas corpus. *See, e.g.*, *Hardemon v. Quarterman*, 516 F.3d 272, 276 (5th Cir. 2008); *Jamison v. Jones*, No. 06-6145, 2006 WL 2556385, at *1 (10th Cir. Sept. 6, 2006); *Cousin v. Savage*, No. 00-15378, 2002 WL 1417104, at *1 (9th Cir. July 1, 2002), *cert. denied,* 537 U.S. 1021 (2002).

by appellant.FN1 With those suspicions in mind, Gentry immediately
contacted Deputy Anthony Quirino, whom she knew as a K–9 officer
with the sheriff's office from the 2008 investigation of appellant.

> FN1. Based on appellant's receipt of the 2008 shipment of
> marijuana, he was charged with drug trafficking in Case
> No. CR–520709. The facts of appellant's prior offense
> were admitted at trial in accordance with Evid.R. 404.

Deputy Anthony Quirino testified that he was a K–9 handler and
deputy with the Cuyahoga County Sheriff's Office. Deputy Quirino
testified that he and his dog, Hugo, responded to a call from Town Air
Freight that they possessed a suspicious package. Deputy Quirino
testified that Hugo went directly to the suspicious package and
signaled that it contained drugs. Subsequently, the package was taken
to the police department for inspection. Upon obtaining a search
warrant, Deputy Quirino inspected the package and confirmed that it
contained approximately 60 pounds of marijuana, worth an estimated
$60,000. The package was then returned to Town Air Freight for a
"controlled delivery," and appellant was informed that his package was
ready to be picked up.

Appellant's girlfriend, Patricia Casey, testified that on September 24,
2009, appellant drove her to the Town Air Freight warehouse and
instructed her to go into the warehouse and sign for a package. Casey
testified that the invoice identified "Paul Anderson" FN2 as the
recipient and indicated that the package contained auto parts. Casey
testified that she went into Town Air Freight and signed her name for
appellant's package, and the package was loaded into appellant's van
by a Town Air Freight employee.FN3

> FN2. Appellant used his real name, Paul Henderson, on
> the 2008 shipment invoice.
> FN3. Because of her involvement, Casey was arrested and
> named as appellant's co-defendant. Casey testified that
> she entered a guilty plea to a reduced charge in exchange
> for her truthful testimony against appellant.

Deputy Ben Meder of the Cuyahoga County Sheriff's Department
testified that he was assigned by his department to conduct
surveillance of appellant's vehicle. Deputy Meder testified that
unmarked police vehicles followed appellant once he left Town Air
Freight with the package. After appellant dropped Casey off at her
home, police officers stopped appellant's vehicle and arrested him. A

4

cell phone and $21 in cash was found on appellant, and officers
retrieved a second cell phone from appellant's vehicle.

On June 7, 2010, the jury found appellant guilty of all counts. At his
sentencing hearing, the trial court concluded that the possession and
trafficking convictions were allied offenses, and the state elected to
pursue sentencing on appellant's drug trafficking conviction. Appellant
was sentenced to an aggregate nine-year term of imprisonment, a
$7,750 fine, court costs, driver's license suspension, and the forfeiture
of two cell phones.

(Doc. 15, RX 20, at 1-3; State v. Henderson, No. 95655, 2012 WL 892905, at *1-*2

(Ohio Ct. App. Mar. 12, 2012).)

Because Henderson had filed a number of frivolous motions during the

pendency of his state case(s), see, e.g., doc. 15, RX 21, the court will address the

filings relevant to his habeas petition in the body of this memorandum.


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

Under § 2254(d)(1), the writ may issue only if one of the following two
conditions is satisfied -- the state-court adjudication resulted in a
decision that (1) "was contrary to ... clearly established Federal law, as
determined by the Supreme Court of the United States," or (2)
"involved an unreasonable application of ... clearly established Federal

> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291

F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v.

Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court

considers the state decision to be erroneous or incorrect.  Rather, the federal court

must determine that the state court decision is an objectively unreasonable

application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Henderson has filed his petition pro se.  The pleadings of a petition drafted

by a pro se litigant are held to less stringent standards than formal pleadings

drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292,

295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404

U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded

litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113

(1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

## III.  STATUTE OF LIMITATIONS

The respondent argues that the petition should be denied as untimely filed. (Doc. 15, at 15-17.)

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking a federal writ of habeas corpus to file his petition within one year after his state conviction has become "final."  Carey v. Saffold, 536 U.S. 214, 216 (2002) (citing 28 U.S.C. § 2244(d)(1)(A)).  The conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Thus, the one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari.  Gonzalez v. Thaler, 132 S.Ct. 641, 653-654 (2012); Clay v. United States, 537 U.S. 522, 528 n.3 (2003).  A habeas petitioner filing for collateral relief does not benefit from the 90 day certiorari period.  Lawrence v. Florida, 549 U.S. 327 (2007) (interpreting 28 U.S.C. § 2244(d)(2)).

The limitations period is tolled while "properly filed" state post-conviction or collateral proceedings are pending.  Souter v. Jones, 395 F.3d 577, 585 (6th Cir.

7

2005); Searcy v. Carter, 246 F.3d 515, 517-518 (6th Cir.), cert. denied, 534 U.S. 905 (2001); 28 U.S.C. § 2244(d)(2).  However, an untimely post-conviction or collateral motion is not considered "properly filed" so as to toll the running of the statute of limitations.  Allen v. Siebert, 552 U.S. 3 (2007) (per curiam) (affirming Pace v. DiGuglielmo, 544 U.S. 408 (2005)); Williams v. Wilson, No. 03-4404, 2005 WL 2175914, at *3 (6th Cir. Aug. 9, 2005), cert. denied, 547 U.S. 1152 (2006).

## A.  The 520709 Case

In the 520709 case, Henderson's conviction became final with the expiration of time for direct review of his conviction and sentencing.  Henderson was re-sentenced on his conviction on Sept. 30, 2009, when the court found a violation of the community control conditions it had imposed the previous month in his original sentencing.  (Doc. 15, RX 4, 5.)  Under Ohio law, Henderson had 30 days within which to file his direct appeal after the date of sentencing.  Ohio R. App. P. 4(A).  Since he did not file a timely direct appeal, his conviction in the 520709 case became final 30 days after the journal entry of sentencing on Sept. 30, 2009.  (Doc. 15, RX 5.)  The statute began to run on Oct. 30, 2009, and expired one year later.  See, e.g., Goodballet v. Mack, 266 F.Supp.2d 702, 705 (N.D. Ohio 2003).  Thus, Henderson's petition filed on Nov. 6, 2014, was untimely.  28 U.S.C. § 2244(d)(1)(A).

8

### B.  The 530899 Case

In the 530899 case, Henderson was sentenced based on the jury verdict of guilty on June 8, 2010, which was journalized on June 16, 2010.  (Doc. 15, RX 9.) Since he did not file a timely direct appeal, his conviction in the 530899 case ordinarily would have become final for habeas purposes 30 days after the journal entry of sentencing on June 16, 2010.[2]  The statute began to run on July 16, 2010, and would have expired one year later, July 16, 2011.

### 1.  Delayed Appeal

Before the statute had run, however, the state court of appeals granted Henderson's Sept. 2, 2010, motion for leave to file a delayed appeal, on Sept. 7, 2010.  (Doc. 15, RX 10, 12.)  The filing of the motion for a delayed appeal is considered collateral review, which tolled the running of the statute during the pendency of the appeal.  DiCenzi v. Rose, 452 F.3d 465, 468 (6th Cir. 2006); Searcy, 246 F.3d at 519; Sanders v. Bobby, No. 5:07CV682, 2008 WL 276415, at *3 (N.D. Ohio Jan. 31, 2008).  At that point, the statute had run 47 days, which left 318 days remaining.

However, the court granted his motion for leave to appeal, thus his conviction was not considered "final" for habeas purposes.  See, e.g., Foster v. Bobby, No. 07CV1303, 2010 WL 1524484, at *4 n.3 (N.D. Ohio Apr. 15, 2010) (when state court

---

[2]  The respondent mistakenly cites the date as June 16, 2009 (doc. 15, at 4), but reference to the sentencing entry itself indicates that the correct date is June 16, 2010.  (Doc. 15, RX 9.)

9

grants motion for delayed appeal, it restores pendency of direct appeal, citing Jimenez v. Quarterman, 555 U.S. 113, 129 S.Ct. 681, 686 (2009)); see also Johnson v. United States, No. 09-1556, 2012 WL 171379, at *3 (6th Cir. Jan. 23, 2012).

Henderson's conviction was affirmed on appeal.  (Doc. 15, RX 20; State v. Henderson, No. 95655, 2012 WL 892905 (Ohio Ct. App. March 15, 2012).)  Because Henderson had previously been found to be a vexatious litigator, he was required to seek leave to appeal the March 15, 2012, judgment.  The Supreme Court of Ohio granted leave to file such an appeal.  (Doc. 15, RX 21.)  Henderson filed a memorandum in support of jurisdiction on May 31, 2012 (doc. 15, RX 23), and an amended memorandum in support on June 25, 2012 (doc. 15, RX 24).  Henderson filed a number of other motions as well.  (Doc. 15, RX 25, 27, 29.)

On Sept. 5, 2012, the Supreme Court of Ohio declined jurisdiction, and dismissed the appeal as not involving any substantial constitutional question.[3] (Doc. 15, RX 30; State v. Henderson, 132 Ohio St.3d 1516, 974 N.E.2d 113 (2012).) Henderson did not file for certiorari within the ninety days allowed, and tolling continued during that time period.  See, e.g., DiCenzi, 452 F.3d at 469 (additional

---

[3]  After the court entered judgment on Sept. 5, 2012, Henderson filed a Motion to Suspend Execution of Sentence (doc. 15, RX 31), and an Application for Reconsideration and En Banc Review (doc. 15, RX 32).  The state court denied both of these motions on Nov. 7, 2012.  (Doc. 15, RX 34-35.)  The respondent does not take a position as to whether these motions should toll the statute of limitations as part of the direct appeal process.  (Doc. 15, at 17 n.6.)  However, the motions were denied prior to the expiration of the 90-day tolling for filing for certiorari, so the point is moot.

ninety days for certiorari); Foster, 2010 WL 1524484, at *4 n.3.  The statute began to run anew on Dec. 4, 2012.  The statute of limitations period would have expired on Dec. 4, 2013.

## 2.  Untimely Rule 26(B) Application

On May 7, 2013, Henderson filed a Rule 26(B) application to reopen his appeal, arguing ineffective assistance of appellate counsel.  (Doc. 15, RX 36.)  The state court of appeals denied the application on June 19, 2013.  (Doc. 15, RX 38; State v. Henderson, No. 95655, 2013 WL 3156517 (Ohio Ct. App. June 19, 2013).) The court noted that the application was filed fourteen (14) months after the appellate decision, therefore untimely, and found that Henderson had failed to demonstrate good cause for the untimely filing.  (Doc. 15, RX 38, at [3]-[4].)  The court also noted that Henderson had chosen to proceed pro se in his appeal, and could not complain of ineffective assistance of counsel.  Id.

The limitations period is tolled while "properly filed" state post-conviction or collateral proceedings are pending, Souter , 395 F.3d at 585; Searcy, 246 F.3d at 517-518; 28 U.S.C. § 2244(d)(2); but an untimely post-conviction or collateral motion is not considered "properly filed" so as to toll the running of the statute of limitations.  Allen, 552 U.S. 3 (2007); Williams, 2005 WL 2175914, at *3.

Under Ohio law, a Rule 26(B) motion to reopen must be filed in the court of appeals within 90 days of the appellate judgment.  State v. Lamar, 102 Ohio St.3d 467, 468, 812 N.E.2d 970 (2004) (per curiam), cert. denied, 543 U.S. 1168 (2005);

11

State v. Reddick, 72 Ohio St. 3d 88, 90, 647 N.E.2d 784, 786 (1995) (per curiam).

The appellate judgment at issue was entered on March 15, 2012.  (Doc. 15, RX 20;

Henderson, 2012 WL 892905.)  Henderson's application to reopen was not filed until

May 7, 2013.  (Doc. 15, RX 36.)

Henderson's application was rejected as untimely.  (Doc. 15, RX 38.)

Henderson's untimely Rule 26 application to re-open his appeal does not toll the

limitations period.  Siebert, 552 U.S. at 7; Kimble v. Gansheimer, No. 4:08CV01048,

2009 WL 4676959, at *14 (N.D. Ohio Dec. 4, 2009).

### 3.  Other Post-Conviction Motions

The respondent contends that, during the limitations period, "Henderson

filed many frivolous, repetitive motions or petitions for collateral relief starting with

his April 17, 2013 motions..." (Doc. 15, at 18.)

### a.  Motion to Correct Sentence

On Apr. 17, 2013, Henderson filed a "Motion to Correct Sentence" in the trial

court, arguing that post-release control was not properly imposed, that the trial

court did not properly consider Ohio Rev. Code §§ 2929.11 and 2929.12 when his

sentence was imposed, and that the court did not properly consider whether some of

his convictions comprised allied offenses of similar import.  (Doc. 15, RX 49.)  The

court denied his motion to correct sentence on May 15, 2013.  (Doc. 15, RX 51.)

Henderson did not appeal this denial.

12

It does not appear that the State filed an opposition to this motion, and the trial court denied it without addressing the merits. The respondent does not argue that it was not properly filed. Therefore, the court has no basis to consider this motion frivolous. This court will not sua sponte address the merits of the motion. The court considers the motion to be a postconviction motion which tolls the limitations period while it was pending.

Since Henderson did not appeal the denial of the motion within thirty days, the statute resumed running on June 15, 2013, thus the statute was tolled for fifty-nine days during the pendency of the motion. The statute of limitations period as tolled expired on Jan. 23, 2014.

### b. Motions to Vacate

That same April 17, Henderson filed a "Motion to Vacate Void Judgments, Convictions and Sentences" pursuant to the trial court's alleged lack of subject-matter jurisdiction. Henderson based his motion on allegedly defective complaints and indictments in both of his criminal cases. (Doc. 15, RX 50.)

On May 20, 2013, Henderson filed a second Motion to Vacate, requesting an emergency hearing, based on the same argument as the first, namely defective indictments. (Doc. 15, RX 52.) The state filed a response, arguing that Henderson's claims were barred by res judicata. (Doc. 15, RX 53.)

On June 12, 2013, Henderson filed a third Motion to Vacate, also styled as a motion for summary judgment, again on the basis of defective indictments. (Doc.

15, RX 54.)  Perhaps under the impression that the trial court expected him to file motions on a monthly basis, Henderson filed his fourth Motion to Vacate on July 15, 2013, again also styled as a motion for summary judgment, and again arguing defective indictments.  (Doc. 15, RX 55.)  The state again responded that Henderson's claims were barred by res judicata.  (Doc. 15, RX 56.)

On August 6, 2013, the trial court denied Henderson's motion(s) to vacate void convictions.  (Doc. 15, RX 57.)  In fairness, this ruling probably did not reach Henderson before he filed his fifth Motion to Vacate on August 8, 2013, also styled as a "Judicial Notice for Writ of Execution."  (Doc. 15, RX 58.)  This motion (and "writ") was based on the same argument as his previous motions to vacate.  (Doc. 15, RX 58, at 2.)  On August 26, the trial court denied his motion. (Doc. 15, RX 60.)

On Sept. 9, 2013, Henderson filed a Notice of Appeal, "from the judgment(s) entry of conviction, entered . . . on May 9, 2013, and August 8, 2013."  (Doc. 15, RX 61; see generally RX 51 and RX 57.)

On Dec. 13, 2013, Henderson filed a "Motion to Dismiss," requesting that he be immediately released due to lack of subject-matter jurisdiction, and that the "cases at bar" [his convictions?] be dismissed with prejudice.  (Doc. 15, RX 62, at 6.)  The court of appeals denied that motion on Dec. 19, 2013.  (Doc. 15, RX 63.)

On May 29, 2014, the Ohio Court of Appeals addressed Henderson's appeal from the trial court's denial of his motion(s) to vacate his sentence.  (Doc. 15, RX 68;

14

State v. Henderson, No. 100374, 2014 WL 2466106 (Ohio Ct. App. May 29, 2014).)

The court ruled:

> Every one of Henderson's current arguments were already addressed
> by this court in Henderson's direct appeal and found to be without
> merit.  Henderson's assigned errors are collectively overruled.
> Henderson's arguments were already determined to be without merit,
> and Henderson cannot collaterally attack that judgment through yet
> another appeal.  There was no reasonable basis for filing the current
> appeal.  Henderson had his opportunity to challenge his conviction on
> the basis of the facts and arguments presented in his direct appeals.
> In fact, this is Henderson's third attempt to raise the same set of facts
> and arguments.

(Doc. 15, RX 68, at [5]-[6]; Henderson, 2014 WL 2466106, at *2 (internal citation
omitted).)  The court pointed out that Henderson had been "admonished for filing
frivilous appeals."  (Doc. 15, RX 68, at [6]; Henderson, 2014 WL 2466106, at *2.)

The court of appeals found Henderson to be a "vexatious litigator," pointing
out that he had filed ten appeals and eighteen original actions since 1999, "several
of which were not reasonably grounded in fact or warranted by existing law."  (Doc.
15, RX 68, at [7]; Henderson, 2014 WL 2466106, at *3.)  The court found there were
no reasonable grounds for the appeal.  (Doc. 15, RX 68, at [8]; Henderson, 2014 WL
2466106, at *3.)

This court also finds that Henderson's multiple motions to vacate were
frivolous.  The court agrees with the reasoning set forth in another case before this
court:

> Under Section 2244(d)(2), the limitations period is tolled during the
> pendency of a properly filed motion for post-conviction relief.  28 U.S.C.
> § 2244(d)(2).  The filing of a frivolous motion does not toll the statute of

limitations period. A defendant may not utilize a state court's general motion practice to create his own method of seeking post-conviction relief, otherwise he "could bring successive motions seeking to reinstate a denied petition ... and thus stave off the running of the AEDPA-proscribed time to file a federal petition virtually in perpetuity." Draughon v. DeWitt, 2001 WL 840312 *1 (S.D.Ohio 2001) (quoting Adeline v. Stinson, 206 F.3d 249, 252-53 (2d Cir.2000)); See also, Sudberry v. Warden, Southern Ohio Correctional Facility, 626 F.Supp.2d 767, 779-80 (S.D.Ohio 2009) ("[The court] assume[s], without deciding, that respondent may not reassert [a] defense with respect to those grounds for relief, which have already been denied with prejudice [for being meritless.]").

Garner v. Gansheimer, No. 1:09CV00874, 2010 WL 547482, at *5 (N.D. Ohio Feb. 10, 2010). This court finds that the motions to vacate were not "properly filed" within the meaning of Section 2244(d)(2), and therefore do not toll the AEDPA statute of limitations.

The statute of limitations period as tolled expired on Jan. 23, 2014, and Henderson's habeas petition was not filed until Nov. 6, 2014. Therefore, Henderson's petition, as to the 530899 case, was untimely filed.


## IV. SUMMARY

The petition should be denied as untimely filed.

In the 520709 case, Henderson's conviction became final with the expiration of time for direct review of his conviction and sentencing. Henderson was re-sentenced on his conviction on Sept. 30, 2009. (Doc. 15, RX 4, 5.) Since he did not file a timely direct appeal, his conviction in the 520709 case became final 30 days after the journal entry of sentencing on Sept. 30, 2009. (Doc. 15, RX 5.) The statute

16

began to run on Oct. 30, 2009, and expired one year later.  Thus, Henderson's petition filed on Nov. 6, 2014, was untimely.

In the 530899 case, he was granted leave to file a delayed appeal, which affirmed his conviction, and the state high court dismissed his appeal on Sept. 5, 2012.  (Doc. 15, RX 30.)  Henderson did not file for certiorari within ninety days, and the statute began to run on Dec. 4, 2012.  The statute was tolled for 59 days during the pendency of his motion to correct sentence, but the limitations period as tolled expired on Jan. 23, 2014, and Henderson's habeas petition was not filed until Nov. 6, 2014.  Therefore, Henderson's petition, as to the 530899 case, was untimely filed as well.

## V.  RECOMMENDATION

The petition should be denied as untimely filed.

Dated:  __Jan. 8, 2016__          __/s/ Kenneth S. McHargh__
                                                     Kenneth S. McHargh
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

17